**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADAM CALABRESE, individually on behalf of themselves and other similarly situated, | |
| Plaintiff, | Case No. 2:16-cv-00868-JCJ |
| v. | Hon. J. Curtis Joyner |
| TGI FRIDAY'S INC.; SENTINEL CAPITAL PARTNERS; TRIARTISAN CAPITAL PARTNERS; CARLSON COMPANIES; AND DOE DEFENDANTS 1-10, | JURY DEMAND |
| Defendants. | |

**DEFENDANT TGI FRIDAY'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS**

Gerald L. Maatman, Jr.*
*gmaatman@seyfarth.com*
Jennifer A. Riley*
*jriley@seyfarth.com*
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Phone: 312-460-5000
Fax:    312-460-7000

Gina Merrill*
*gmerrill@seyfarth.com*
Jacob Oslick (Pa. Attorney No. 311028)
*joslick@seyfarth.com*
SEYFARTH SHAW LLP
620 Eighth Avenue, 33rd Floor
New York, NY 10018
Phone: 212-218-5500
Fax:    212-218-5526
*Admitted *Pro Hac Vice*

*Attorneys for Defendants*

Dated:  April 28, 2017

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND...................................................................................................2

    I.      PLAINTIFF'S EMPLOYMENT WITH FRIDAY'S ...........................................2

    II.    PLAINTIFF RECEIVED PROPER NOTICE OF THE TIP CREDIT..................3

           A.    Friday's Informed Plaintiff Of The Tip Credit At The Start Of His Employment ....................................................................................................3

           B.    Friday's Reminded Plaintiff Of The Tip Credit When He Transferred To Montgomeryville, Pennsylvania .......................................5

           C.    Friday's Provided Plaintiff Another Tip Credit Notification In January 2015 ...........................................................................................6

    III.   PLAINTIFF ADMITS THAT TIP SHARING WITH BARTENDERS IN NEW HAMPSHIRE WAS VOLUNTARY.................................................7

PROCEDURAL BACKGROUND...........................................................................................8

LEGAL STANDARD ..............................................................................................................8

ARGUMENT............................................................................................................................9

    I.      THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S TIP CREDIT NOTICE CLAIMS..................................................9

           A.    Friday's Properly Informed Plaintiff Of All Five Items Regarding The Tip Credit ......................................................................................12

           B.    Plaintiff's Vague Testimony That He Neither Heard Nor Saw The Term "Tip Credit" At Friday's Is Insufficient To Create An Issue Of Fact .................................................................................................16

    II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S TIP CREDIT NOTIFICATION CLAIMS IN PART .................................................................................................18

           A.    Plaintiff's NHMWL Tip Credit Notice Claim Should Be Dismissed Because The NHMWL Does Not Require Tip Credit Notice .................18

           B.    The Court Should Grant Summary Judgment On Plaintiff's Tip Credit Notice Claims From January 21, 2015 Forward............................19

III.    THE COURT ALSO SHOULD GRANT SUMMARY JUDGMENT ON
        PLAINTIFF'S INVOLUNTARY TIP SHARE CLAIM .....................................19

CONCLUSION.........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................21

*Chen v. C & R Rock Inc.*,
No. 14-CV-114, 2016 U.S. Dist. LEXIS 36951 (D.N.H. Mar. 22, 2016)..............................18

*City of Philadelphai v. Beretta U.S.A. Corp.*,
277 F.3d 415 (3d Cir. 2002) ............................................................................... 18, 19

*Collins v. Sload*,
No. 99-CV-829, 2006 WL 319290 (M.D. Pa. Feb. 10, 2006).............................................17

*Copantila v. Fiskardo Estiatorio*,
788 F. Supp. 2d 253 (S.D.N.Y. 2011) ...................................................................14

*Cornelison v. Tambrands, Inc.*,
710 F. Supp. 706 (D. Minn. 1989) .........................................................................16

*Driver v. AppleIllinois, LLC*,
917 F. Supp. 2d 793 (N.D. Ill. 2013)......................................................................14

*Giuffre v. Marys Lake Lodge*,
LLC, No. 11-CV-28, 2012 WL 4478806 (D. Colo. Sept. 28, 2012)....................................17

*Howard v. Second Chance Jai Alai LLC*,
No. 15-CV-200, 2016 WL 3349022 (M.D. Fla. June 16, 2016)...........................................14

*Ichiban Japanese Steakhouse, Inc. v. Rocheleau*,
167 N.H. 138 (2014)............................................................................................21

*Kilgore v. Outback Steakhouse of Florida, Inc.*,
160 F.3d 294 (6th Cir. 1998) ................................................................................11

*Kubiak v. S.W. Cowboy, Inc.*,
164 F. Supp. 3d 1344 (M.D. Fla. Feb. 18, 2016)..............................................................21

*Orsatti v. New Jersey State Police*,
71 F.3d 480 (3d Cir. 1995) ......................................................................................9

*Pellon v. Business Representation Intern., Inc.*,
  528 F. Supp. 2d 1306 (S.D. Fla. 2007) ......................................................... 11, 12

*Podobnik v. U.S. Postal Service*,
  409 F.3d 584 (3d Cir. 2005) ............................................................................ 21

*Reich v. Chez Robert, Inc.*,
  28 F.3d 401 (3d Cir. 1994) .............................................................................. 11

*Schaefer v. Walker Bros. Enters, Inc.*,
  829 F.3d 551 (7th Cir. 2016) ............................................................... 10, 11, 13

*Schaefer v. Walker Bros. Enters., Inc.*,
  No. 10-CV-6366, 2014 WL 7375565 (N.D. Ill. Dec. 17, 2014), *aff'd* 829 F.3d
  551 (7th Cir. 2016) ...................................................................................... 16, 17

*Schoch v. First Fid. Bancorporation*,
  912 F.2d 654 (3d Cir. 1990) .............................................................................. 9

*Thornton v. Crazy Horse, Inc.*,
  No. 06-CV-251, 2012 WL 2175753 (D. Alaska June 14, 2012) ......................... 21

*Travelers Indem. Co. v. Dammann & Co., Inc.*,
  594 F.3d 238 (3d Cir. 2010) ............................................................................ 18

*Turner v. McCarthy*,
  No. 15-CV-829, 2016 WL 7744450 (W.D. Pa. Dec. 27, 2016) .......................... 17

*Velez v. 111 Atlas Rest. Corp.*,
  No. 14-CV-6956, 2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016) ...... 14

*Wysong v. City of Heath*,
  260 Fed. App'x 848 (6th Cir. 2008) .................................................................. 16

**Statutes**

29 U.S.C. § 203(m) ............................................................................... 10, 11, 14

43 P.S. § 333.103(d) ........................................................................................ 10

34 Pa. Code § 231.101(b) ................................................................................ 10

N.H. Rev. Stat. § 279 .............................................................................. 10, 17-19

**Other Authorities**

29 C.F.R. § 531.59 ................................................................................................10

Fed. R. Civ. P. 56(a) ..............................................................................................8

## INTRODUCTION

Plaintiff's claims fail because, as his own testimony demonstrates, he does not and cannot dispute that Friday's provided him proper notice of the tip credit provisions of the Fair Labor Standards Act ("FLSA") (Count I), Pennsylvania Minimum Wage Act ("PMWA") (Count II), and New Hampshire Minimum Wage Law ("NHMWL") (Count III), and he does not and cannot contend that Friday's required tip sharing in New Hampshire in violation of the NHMWL (Count III).  Accordingly, summary judgment is mandated.

First, Plaintiff's tip credit notification claims fail under the FLSA, PMWA, and NHMWL.  The undisputed evidence demonstrates that Friday's properly informed Plaintiff of the tip credit.  Plaintiff does not dispute that Friday's provided Plaintiff a tip credit notification form and employee handbook, that Plaintiff's store manager reviewed these materials with Plaintiff during orientation, or that Friday's displayed up-to-date posters approved by the U.S. Department of Labor ("DOL") throughout his employment.  Through these materials, Friday's provided more than sufficient notice of the tip credit.  The Court, therefore, should grant summary judgment in favor of Friday's on Plaintiff's tip credit claims in their entirety.

Second, Plaintiff's involuntary tip sharing claim fails under the NHMWL.  The undisputed evidence demonstrates that Friday's did not require Plaintiff to share his tips with other employees in New Hampshire.  Plaintiff admits that Friday's did not mandate tip sharing among employees and, instead, allowed Plaintiff to decide whether and how much of his tips to share with fellow tipped employees.  Plaintiff's vague allegation that managers "strongly encouraged" him to share tips is not sufficient at this juncture of the case to create an issue of fact on his claim that Friday's required or coerced him to share tips.  The Court, therefore, should grant summary judgment in favor of Friday's on Plaintiff's tip pooling claims in their entirety.

Accordingly, as explained more fully below, there are no genuine issues of material fact preventing summary judgment in favor of Friday's on Plaintiff's claims.

## FACTUAL BACKGROUND

### I.   PLAINTIFF'S EMPLOYMENT WITH FRIDAY'S

Plaintiff Adam Calabrese worked as a part-time server at two Friday's locations.  (Ex. 32,[1] Calabrese Dep. 65:8-13 & 188:12-24.)  From October 2013 to March 2014, Plaintiff worked at Friday's in Concord, New Hampshire; from March 2014 to August 2014, he worked at Friday's in Montgomeryville, Pennsylvania; and, from October 2014 to February 2015, he returned to Friday's in Concord, New Hampshire.  (Ex. 2, Cunningham Decl. ¶ 3.)  Prior to working for Friday's, Plaintiff worked as a server at Macaroni Grill in Pennsylvania.  (Ex. 32, Calabrese Dep. 29:24-30:14.)[2]

At the end of each pay period, Friday's provided Plaintiff a wage statement that confirmed, among other things, his hourly rate of pay and the amount of tips he reported during the pay period.  (Ex. 7, Plaintiff's Pay Records.)  As Plaintiff's pay records show, he never received less than $30 in tips in any month.  (Ex. 7, Plaintiff's Pay Records & Ex. 32, Calabrese Dep. 190:22-191:9.)  Indeed, with tips, Plaintiff always earned at least minimum wage and often earned far above minimum wage.  (Ex. 2, Cunningham Decl. ¶ 4; Ex. 6, Plaintiff's Time Records; Ex. 7, Plaintiff's Pay Records.)

---

[1] The exhibit numbers herein refer to Exs. 1-31 attached to Defendant TGI Friday's Response In Opposition To Plaintiff's Motion To Conditionally Certify Collective Action (ECF No. 40) and continue therefrom to include Exs. 32-35 attached to Defendant TGI Friday's Response In Opposition To Plaintiff's Motion To Certify The Class Pursuant To Federal Rule Of Procedure 23 (ECF No. 47).

[2] Plaintiff was paid a tip credit wage at Macaroni Grill.  (*Id.* at 83:6-17.)  Plaintiff's general manager at Macaroni Grill told Plaintiff that he would be paid the tip credit wage.  (*Id.* at 33:15-17 & 34:16-35:1.)  The day after filing the instant lawsuit, Plaintiff filed a separate action against Macaroni Grill for alleged violation of tip credit notice requirements.  (*Id.* at 36:16-23 & Ex. 25, Macaroni Grill Complaint).  Some of the allegations in the Macaroni Grill complaint match the allegations in this complaint word for word.  (*Compare* ECF No. 1 ¶ 57 *with* Ex. 25, Macaroni Grill Complaint ¶ 53.)

## II.       PLAINTIFF RECEIVED PROPER NOTICE OF THE TIP CREDIT

### A.       Friday's Informed Plaintiff Of The Tip Credit At The Start Of His Employment

Plaintiff applied online for a server position at Concord and interviewed with manager Nicole St. Pierre ("Pierre"), General Manager Heather Lascelle ("Lascelle"), and a District Manager.  (Ex. 32, Calabrese Dep. 47:10-22, 50:22-51:2 & 60:9-14.)  Plaintiff cannot recall what Pierre or Lascelle said during his interviews regarding compensation, but he admits that, based on what Pierre or Lascelle told him, he knew that he would be paid an hourly wage plus tips.  (*Id.* at 49:6-15, 55:19-22 & 56:1-20.)  Further, Plaintiff admits that, when he accepted a job with Friday's, he had all of the information he needed regarding how he would be paid.  (*Id.* at 58:5-11.)

Upon hire, Plaintiff participated in orientation and training.  Friday's orientation records show that, on October 6, 2013, Plaintiff reviewed and acknowledged Friday's tip credit notification form and Team Member Handbook.  (Ex. 26, Plaintiff's Orientation & Training Records (entries entitled "Tip Credit-Pool Notification", "Team Member Handbook", and "Team Member Handbook Review Test"); Ex. 2, Cunningham Decl. ¶ 20.)  Plaintiff testified that he has no reason to doubt the accuracy of those records.  (Ex. 32, Calabrese Dep. 106:14-107:5 & 107:15-19.)  In particular, the tip credit notification form reviewed and acknowledged by Plaintiff provided:

Dear Tipped Team Member:

Below is important information regarding your pay.  Please read the information below and if you have any questions regarding this notice, speak to your manager.

- The amount of cash wages to be paid to you per hour will be $_____.

- Assuming you have received a sufficient amount of tips to cover the tip credit, the amount of your tips per hour to be credited as wages, i.e. the tip credit amount, will be $_____.

- You have the right to retain all the tips you receive, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.  Your required tip pool contribution or percentage is _____%.

- The tip credit shall not apply unless you are informed of these requirements.

(Ex. 2, Cunningham Decl. ¶ 8; Ex. 14, 2011 Tip Credit Memorandum & Attachments; Wells Decl.[3] Ex. P (TGIF 002805).)

Similarly, the Team Member Handbook advised Plaintiff, among other things, that if his hourly wages plus tips did not bring him up to the minimum wage, Friday's would make up the difference.  (Wells Decl. Ex. T, January 2012 Handbook (TGIF 000571)  ("In some states, you may make less than minimum wage before tips. . . However, we promise that if you don't make minimum wage with your hourly rate of pay and tips combined, we'll make up the difference.").)  Plaintiff admits that Lascelle reviewed with him the "starter questions" that appear in the Team Member Handbook, including:

When do I get paid? _____

Am I in a tip credit state?  How much will I be paid by Friday's per hour?_____.

(Ex. 2, Cunningham Decl. ¶ 5 & Wells Decl. Ex. T, January 2012 Handbook (TGIF 000572); Ex. 32, Calabrese Dep. 104:8-12.)

Lascelle's testimony confirms what Friday's records reflect with respect to Plaintiff's orientation.  Per Lascelle's routine practice with new employees, she reviewed and explained

---

[3] "Wells Decl. Ex. __" refers to exhibits attached to the Declaration of Gerald D. Wells, III In Support Of Plaintiff's Motion To Conditionally Certify Collective Class (ECF No. 37-2).

4

each line of the tip credit notification form, including the amount of the cash wage and tip credit amount, and reviewed a copy of the Team Member Handbook.  (Ex. 12, Lascelle Decl. ¶¶ 5-9, 12.)  Plaintiff testified that he has no reason to believe that Lascelle trained him differently than any other employee.  (Ex. 32, Calabrese Dep. at 90:11-14.)  Indeed, Plaintiff admits that, with respect to his hourly pay at Concord, the rate of $3.27 per hour "sounds familiar," that he understood that his base rate was below minimum wage because of tips, and that Lascelle told him that he should keep all of his tips.  (*Id.* at 78:16-80:8, 83:6-17 & 85:2-6.)

Friday's at all times prominently displayed an up-to-date minimum wage poster approved by the U.S. Department of Labor ("US DOL") in its Concord restaurant.  (Ex. 2, Cunningham Decl. ¶ 17.)  Through the US DOL poster, Friday's informed Plaintiff that "[a] specified allowance may be credited toward the minimum wage for tips earned" and "[i]f an employee's tips combined with the employer's cash wage . . . do not equal the minimum hourly wage, the employer must make up the difference."  (Ex. 12, Lascelle Decl. ¶ 13; *see also* Ex. 2, Cunningham Decl. ¶ 17 & Exs. 20-21, Federal Posters; Ex. 35, Cunningham Supplemental Decl. ¶ 7 & Ex. 33, Federal Poster.)  Plaintiff does not dispute that Friday's displayed US DOL minimum wage posters throughout his employment.  (Ex. 32, Calabrese Dep. 121:4-13.)

**B.      Friday's Reminded Plaintiff Of The Tip Credit When He Transferred To Montgomeryville, Pennsylvania**

Plaintiff transferred to the Montgomeryville Friday's in March 2014.  (Ex. 32, Calabrese Dep. 160:6-9; Ex. 2, Cunningham Decl. ¶ 3.)  As Plaintiff admits, Friday's continued paying him in Montgomeryville as it paid him in Concord.  Plaintiff testified that he understood how he would be paid in Montgomeryville, and knew that he would be paid a cash wage less than minimum wage based on tips, as he had been in Concord.  (Ex. 32, Calabrese Dep. 167:13-17 & 173:21-24.)  Like the Concord restaurant, at the Montgomeryville location Friday's prominently

5

displayed a poster approved by the US DOL throughout Plaintiff's employment.  (Ex. 31, Dimmack Decl. ¶ 12; *see also* Ex. 2, Cunningham Decl. ¶ 17 & Exs. 20-21, Federal Posters; Ex. 35, Cunningham Supplemental Decl. ¶ 7 & Ex. 33, Federal Poster.)  Similarly, Friday's prominently displayed the poster approved by the Pennsylvania Department of Labor & Industry at the Montgomeryville restaurant throughout Plaintiff's employment.  (Ex. 31, Dimmack Decl. ¶ 12; Ex. 2, Cunningham Decl. ¶ 18.)  That poster, among other things, advised employees of the minimum cash wage and stated that an "employer must make up the difference if the tips and $2.83 do not meet the regular Pennsylvania minimum wage."  (Ex. 2, Cunningham Decl. ¶ 18 & Exs. 22-23, Pennsylvania Posters; Wells Decl. Ex. C, Gumbert Dep. 208:6-14.)

### C.   Friday's Provided Plaintiff Another Tip Credit Notification In January 2015

Friday's provided Plaintiff another tip credit notification form on January 21, 2015.  (Ex. 32, Calabrese Dep. 127:2-8; *see also* Ex. 18, Plaintiff's Signed New Hampshire Notice.)  In that form, Friday's notified Plaintiff, among other things, that:

> You are guaranteed at least the federal minimum wage of $7.25 (or, if applicable, your state/local law, whichever is greater) for each hour worked.  The New Hampshire minimum wage is $7.25 per hour.  As a tipped employee, the minimum wage is satisfied partly through a cash wage paid by [Friday's] (sometimes referred to as the "tip credit rate") and partly through tips received by you (referred to as the "tip credit") . . .
>
> • The cash wage paid to you per hour will be $3.26 per hour.
>
> • The tip credit amount (the amount your wages are increased as a result of the tips credited as wages) is the difference between the minimum wage ($7.25) and the cash wage ($3.26) = $3.99 per hour.
>
> • The tip credit cannot exceed the amount of tips actually received by you. If the tips you receive are not equal to or greater than the tip credit, the Company will make up the difference.
>
> • You have the right to retain all the tips you receive, except for a valid tip sharing arrangement limited to employees who customarily and regularly receive tips.

(Ex. 18, Plaintiff's Signed New Hampshire Notice.)  Plaintiff concedes that, through this tip credit notification form, Friday's provided Plaintiff sufficient notice as a matter of law.  (ECF No. 39-1 at 8; *see also id.* at 4 (conceding that the date the tip credit class should end is when tipped employees executed the 2015 tip credit notification form).)

## III.   PLAINTIFF ADMITS THAT TIP SHARING WITH BARTENDERS IN NEW HAMPSHIRE WAS VOLUNTARY

Plaintiff admits that Friday's did not have any designated or mandatory tip-out in Concord.  (Ex. 32, Calabrese Dep. 202:22-203:4 & 214:4-10.)  Further, Plaintiff admits that managers in Concord did not require him to tip-out other employees.  (*Id.* at 86:18-87:7 & 292:7-16.)  Indeed, as Plaintiff testified, Lascelle told Plaintiff that he was entitled to keep all tips that he received.  (*Id.* at 85:2-6.)

Plaintiff explained that he decided whether to tip-out bartenders as well as how much to tip-out bartenders.  (*Id.* at 86:23-87:7, 88:17-23 & 198:10-199:1.)  Plaintiff made this decision based on the number of drinks he "rang in on that evening."  (*Id.* at 198:19-199:1.)  Plaintiff concedes that, on some occasions, he did not tip-out bartenders, particularly when he did not ring any drinks with a bartender.  (*Id.* at 199:23-200:4, 278:1-4 & 285:5-21.)  Although Plaintiff believes that the bartenders who prepared drinks for Plaintiff deserved a portion of his tips because they helped Plaintiff earn the tips in the first place (*id.* at 277:17-24), Friday's did not punish or impose any other adverse employment consequence on Plaintiff when he decided not to share tips with bartenders (*id.* at 278:1-279:1).  Indeed, Plaintiff admits that the only consequence was that "[t]he bartenders were a little upset."  (*Id.* at 278:8-20.)

Lascelle confirms that she never suggested, let alone required, tipped employees to share their tips.  Indeed, Lascelle "personally told all tipped employees at the Concord restaurant that they were not required to share their tips with anyone . . . [and] that they were entitled to keep all

7

tips they received." (Ex. 12, Lascelle Decl. ¶ 15.) Further, Lascelle has at all times specifically explained to employees "during orientation . . . that New Hampshire d[oes] not allow mandated tip pools . . . [and] whether they chose to share tips was completely up to them." (*Id.* at ¶ 10.)

## PROCEDURAL BACKGROUND

On February 23, 2016, Plaintiff filed a class and collective action complaint against Friday's, Sentinel Capital Partners ("Sentinel"), TriArtisan Capital Partners ("TriArtisan"), and Carlson Restaurants, Inc. (incorrectly named as "Carlson Companies") ("Carlson") (collectively, "Defendants"). (ECF No. 1.)[4] Plaintiff brought claims under the FLSA, the PMWA, and the NHMWL for allegedly failing to provide him (and others) proper notice of the tip credit prior to paying him the tip credit wage. (ECF No. 1 at ¶¶ 55, 76-77, 83, 91.) Specifically, Plaintiff alleged that Friday's failed to inform Plaintiff of "(i) [Friday's] intention to take the tip credit, and (ii) the amount [Friday's] intended to claim as a tip credit." (*Id.* at ¶ 55.) Plaintiff also brought a claim under the NHMWL because Friday's allegedly "mandated that . . . Plaintiff . . . participate in a tip pooling/tip sharing arrangement." (*Id.* at ¶ 59.)[5] Summary judgment is appropriate on all of Plaintiff's claims (Counts I, II and III).

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A mere scintilla of evidence by the non-moving party will not suffice to survive summary

---

[4] On April 7, 2017, Plaintiff and Defendants filed a stipulation and proposed order of dismissal without prejudice as to Defendants Sentinel, TriArtisan, and Carlson. (ECF No. 44.) If the Court enters that stipulation and proposed order, Friday's will be the only remaining defendant in this action.

[5] Plaintiff's Complaint is somewhat vague with respect to this mandatory tip pooling/tip sharing claim because Plaintiff does not expressly reference it in Count III, wherein he sets forth his NHMWL claim. (*See* ECF No. 1 at ¶¶ 87-94.) Nonetheless, Plaintiff incorporates all previous allegations into Count III by reference and, therefore, Friday's assumes Plaintiff intends to have brought an involuntary tip pooling/tip sharing claim under Count III. (*Id.* at ¶ 87.)

judgment; there must be evidence by which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). The substantive law identifies the facts which are "material," *i.e.*, those facts over which a dispute might affect the outcome of the suit. *Orsatti*, 71 F.3d at 482 (citing *Anderson*, 477 U.S. at 248). An issue of material fact is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Orsatti*, 71 F.3d at 482 (citing *Anderson*, 477 U.S. at 248). Here, there is no genuine dispute of material fact that Friday's properly informed Plaintiff of the tip credit before paying him the tip credit wage and did not require or coerce Plaintiff to share his tips with other employees in New Hampshire. Summary judgment, accordingly, is appropriate on all of Plaintiff's claims.

## **ARGUMENT**

### I.    **THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S TIP CREDIT NOTICE CLAIMS**

The undisputed evidence shows that Friday's provided Plaintiff notice of the tip credit in accordance with its obligations under the FLSA and state law. Plaintiff's allegations that Friday's failed to notify him that it would "make up" the difference between the cash wage and the minimum wage fail as a matter of law. The undisputed evidence demonstrates that Friday's, in fact, provided Plaintiff notice that it would ensure that he earned at least minimum wage and, in fact, paid him a tip supplement on any occasion where his wages fell short. Accordingly, the Court should grant summary judgment on Plaintiff's tip credit notice claims.

The FLSA allows employers to pay tipped employees an hourly wage below the minimum wage in recognition of the fact that such employees receive tips from customers. *See*

29 U.S.C. § 203(m).  The difference between such a wage and the minimum hourly wage is commonly referred to as the "tip credit."  *See, e.g.*, 29 C.F.R. § 531.59.  Both Pennsylvania and New Hampshire similarly allow employers to pay tipped workers a cash wage, which at all relevant times was $3.27 per hour in New Hampshire (N.H. Rev. Stat. § 279:21) and $2.83 per hour in Pennsylvania (43 P.S. § 333.103(d) & 34 Pa. Code § 231.101(b)).

Before paying a tipped employee the applicable cash wage, the FLSA requires an employer to provide a tipped employee notice regarding the tip credit.  *See* 29 U.S.C. § 203(m).  In particular, the FLSA provides that the tip credit provisions "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.* [6]  In May 2011, the US DOL issued regulations wherein it directed employers to provide the following information:

> The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the tipped employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b); *see also* US DOL Fact Sheet No. 15.[7]

---

[6] The PMWA similarly requires that an employer inform a tipped employee of its tip credit provisions before paying the employee a tip credit wage.  *See* 43 P.S. § 333.103(d) (stating in pertinent part that the tip credit "shall not apply with respect to any tipped employe[e] unless . . . [s]uch employe[e] has been informed by the employer of the provisions of this subsection").  The NHMWL, on the other hand, does not have a tip credit notification requirement.  *See* Argument Section II-A, *infra*.

[7] It is not clear from the statute that all five pieces of information are required.  *See Schaefer v. Walker Bros. Enters, Inc.*, 829 F.3d 551, 556 (7th Cir. 2016) ("An employer ought to boil it down and tell workers directly what matters to them.  Three things are apt to matter most to employees at establishments such as these defendants: (a) in anticipation of tips the employer will pay less than the minimum wage; (b) how much the cash wage will fall short

An employer bears the burden of showing that it provided proper notice regarding the tip credit.  *See Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) ("If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage.") (citation omitted). An employer, however, need only *inform* the employee of the requisite items; it need not explain or ensure that the employee understands them.  *See Schaefer*, 829 F.3d at 556 ("[T]he word 'informed' differs from the word 'explained': workers are entitled to knowledge about the tip-credit program but not to a comprehensive explanation.") (citation omitted); *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir. 1998) (holding that an employer must provide notice to the employees, but need not necessarily explain the tip credit because "'inform' requires less from an employer than the word 'explain' would").

Employers may inform employees of the tip credit orally, in writing, or through a combination of oral and written sources.  *See* U.S. DOL Fact Sheet No. 15 ("The employer may provide oral or written notice to its tipped employees informing them of items 1-5 . . . ."); *see also  Schaefer*, 829 F.3d at 558 (holding that "§ 203(m) does not say that all of the information must be in a single document.  The handout plus the handbook plus the poster collectively supplied the information required by federal law . . . "); *Kilgore*, 160 F.3d at 299 (finding that defendant adequately provided notice to employee who received a file folder containing various written materials, including a statement describing the tip policy and stating "tips will be used as a credit against the minimum wage as permitted by federal and/or state law"); *Pellon v. Business Representation Intern., Inc.*, 528 F. Supp. 2d 1306, 1310-11 (S.D. Fla. 2007) (holding that a

---

of the current minimum wage; and (c) if tips plus the cash wage do not at least match the current minimum wage, the employer must make up the difference.  We think that a person told these things has been adequately 'informed' for the purpose of the statute, during the time before the Department of Labor elaborated by regulation."). Nevertheless, here, Friday's provided Plaintiff information regarding all five items.

prominently-displayed poster using language approved by the DOL was sufficient notice because it would "defy logic" to require the display of inadequate information regarding the minimum wage and employer tip credit and noting that Plaintiffs were also informed orally of their tip credit wage).

  **A.**  **Friday's Properly Informed Plaintiff Of All Five Items Regarding The Tip Credit**

  Here, the undisputed facts demonstrate that Friday's properly informed Plaintiff of the tip credit in writing, verbally, and through a combination of sources.

  First, it is undisputed that, on October 6, 2013, Plaintiff reviewed and acknowledged Friday's tip credit notification form.  (Ex. 32, Calabrese Dep. 106:14-107:5, 107:15-19 & 260:3-10; Ex. 26, Plaintiff's Orientation & Training Records.)  Through its tip credit notification form, Friday's informed Plaintiff of all five items that he contends the law requires.  (*Compare* Wells Decl. Ex. P (TGIF 002805) & Ex. 2, Cunningham Decl. ¶ 8 *with* U.S. DOL Fact Sheet No. 15.) In Plaintiff's motion for conditional certification, Plaintiff argues that Friday's tip credit notification form is insufficient because it "fails to inform . . . that the tip credit cannot exceed the amount of tips they actually receive."  (ECF No. 39-1 at 11-12.)  To the contrary, the form states:  "*Assuming you have received a sufficient amount of tips to cover the tip credit*, the amount of your tips per hour to be credited as wages, i.e. the tip credit amount, will be $_____."  (Wells Decl. Ex. P (TGIF 002805) (emphasis added).)  Thus, the tip credit notification form provided sufficient notice as a matter of law.

  Second, even assuming that the tip credit notification form did not adequately inform Plaintiff that Friday's would ensure that he earned at least minimum wage (which it did), Friday's clearly communicated that item through the Team Member Handbook.  It is undisputed that, on October 6, 2013, Plaintiff reviewed and acknowledged Friday's Team Member

Handbook.  (Ex. 32, Calabrese Dep. 106:14-107:5 & 260:3-10; Ex. 26, Plaintiff's Orientation &

Training Records.)  In the Team Member Handbook, Friday's informed Plaintiff, among other

things, that "we promise that if you don't make minimum wage with your hourly rate of pay and

tips combined, we'll make up the difference."  (*See* Wells Decl. Ex. T, January 2012 Handbook

(TGIF 000571).)  In fact, on the one occasion during which Plaintiff's tips did not bring him up

to minimum wage, Friday's paid Plaintiff a "tip supplement" to ensure that he earned at least

$7.25 per hour.  (*See* Ex. 7, Plaintiff's Pay Records (TGIF 000858) (showing Plaintiff received a

tip supplement of $1.17).)

Third, even if Friday's did not provide information regarding its promise to "make up the

difference" through the tip credit notification form and Team Member Handbook (which it did),

it is undisputed that Friday's prominently displayed posters approved by the U.S. DOL in the

Concord restaurant throughout Plaintiff's employment.  (See Ex. 12, Lascelle Decl. ¶ 13 (stating

that posters in Concord were displayed "on the back wall in the kitchen and in the employee

restroom"); Ex. 31, Dimmack Decl. ¶ 12 (stating that posters in Montgomeryville were displayed

"in an area frequented by employees"); Ex. 35, Cunningham Supplemental Decl. ¶ 7 & Ex. 33,

Federal Poster.)  The poster stated, among other things, that "[i]f an employee's tips combined

with the employer's cash wage . . . do not equal the minimum hourly wage, the employer must

make up the difference."  (Ex. 35, Cunningham Supplemental Decl. ¶ 7 & Ex. 33, Federal

Poster.)  Accordingly, even if the tip credit notification form or Team Member Handbook

reviewed and acknowledged by Plaintiff did not alone adequately inform Plaintiff of the tip

credit, the combination of such materials and the U.S. DOL posters provided ample notice.  *See,*

*e.g.*, *Schaefer*, 829 F.3d at 558  (affirming order granting summary judgment where the

employer's "handout plus the handbook plus the poster collectively supplied the information required by federal law").

To the extent Plaintiff contends that Friday's cannot satisfy its tip credit notice obligations through minimum wage posters (ECF No. 45 at 6-7), Plaintiff is incorrect.  Friday's may rely on such posters, particularly in tandem with other forms of notice, to demonstrate that it satisfied its notice obligations.  *See supra* at 11-12.  None of the cases cited by Plaintiff in his Reply In Further Support Of His Motion To Conditionally Certify Collective Class holds otherwise.  (ECF No. 45 at 6-7.)  *See Velez v. 111 Atlas Rest. Corp.*, No. 14-CV-6956, 2016 U.S. Dist. LEXIS 107230, at *25 (E.D.N.Y. Aug. 11, 2016) (faulting defendant for failing to provide any evidence as to the content of the posters at issue and, therefore, leaving the court "no way to determine if the alleged posters provided the employees with adequate notice of the tip credit allowance"); *Copantila v. Fiskardo Estiatorio*, 788 F. Supp. 2d 253, 289 (S.D.N.Y. 2011) (finding that a poster – the contents of which defendants failed to provide evidence – could not alone satisfy the notice requirements); *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 802 (N.D. Ill. 2013) (noting merely that "[t]he text of those posters alone cannot comply with the requirement to inform employees of the provisions of § 203(m)"); *Howard v. Second Chance Jai Alai LLC*, No. 15-CV-200, 2016 WL 3349022, at *5 (M.D. Fla. June 16, 2016) (denying summary judgment because a poster alone could not satisfy tip credit notice requirements and noting that defendant's other "evidence regarding what notice was given . . . is vague and inconclusive").

Fourth, Plaintiff's manager Heather Lascelle provided Plaintiff all notice required by federal and state law.  (Ex. 12, Lascelle Decl. ¶¶ 5-12.)  It is undisputed that Lascelle reviewed the tip credit notification form and Team Member Handbook with each new employee.  She

"went through the tip credit notification form line by line" – including the amount of the cash wage and tip credit amount – and reviewed the Team Member Handbook. (Ex. 12, Lascelle Decl. ¶¶ 7-9 & 12.) Indeed, Plaintiff concedes that:

- He knew he would be paid an hourly wage plus tips based on what his manager told him (Ex. 32, Calabrese Dep. 49:6-15 & 56:1-20);

- He was told, either during an interview or training, that he would be paid $3.27 per hour plus tips and he knew that $3.27 per hour was below the minimum wage (*id.* at 78:16-79:23);

- He reviewed the questions on page 17 of Friday's Team Member Handbook with his manager, including: "Am I in a tip credit state? How much will I be paid by Friday's per hour?" (*id.* at 104:8-12 & Wells Dec. Ex. T, January 2012 Handbook (TGIF 000572));

- He was told by Lascelle that he should keep all of the tips he received (Ex. 32, Calabrese Dep. 85:2-6); and

- He felt that he had all of the information he needed regarding how he would be paid when he accepted the job with Friday's (*id.* at 58:5-11).

Moreover, Plaintiff admits that he undertook every step of training provided by Friday's, and has no reason to believe Lascelle trained him differently than any other employee. (Ex. 32, Calabrese Dep. 90:11-14 & 101:2-13.)

Plaintiff cannot dispute the aforementioned sources of written and verbal notice that independently and together provided him ample information regarding his pay and all five pieces of information regarding the tip credit. The best Plaintiff can muster is an inability to recall key aspects of his training on the tip credit. (*See id.* at 84:1-13 (testifying that he cannot recall whether Lascelle informed him that Friday's was taking a tip credit in the difference between the minimum wage of $7.25 and $3.27 per hour); *id.* at 84:14-85:1 (cannot recall whether Lascelle told him Friday's would make up the difference if his tips failed to cover the tip credit); *id.* at 89:15-20 (cannot recall if Lascelle told him Friday's could not take the tip credit without informing him of the tip credit provisions).)

15

Plaintiff's inability to recall such key facts in the face of Friday's concrete evidence to the contrary is insufficient to create a genuine issue of material fact and, therefore, insufficient to overcome summary judgment. *See Wysong v. City of Heath*, 260 Fed. App'x 848, 856-57 (6th Cir. 2008) (affirming summary judgment because plaintiff could not recall facts necessary to rebut defendant's version of events); *Cornelison v. Tambrands, Inc.*, 710 F. Supp. 706, 710 (D. Minn. 1989) (holding that plaintiff could not defeat motion for summary judgment on her claim that the product she purchased had no warning label where she could not actually recall whether it had a warning label or not).

In short, Plaintiff's admissions regarding receiving notice of the tip credit, as well as his inability to refute any aspects of such notice, doom his tip credit claims under the FLSA, the PMWA, and the NHMWL as a matter of law. As such, the Court should grant summary judgment on Plaintiff's tip credit notification claims under the FLSA (Count I), the PMWA (Count II), and the NHMWL (Count III).

**B.    Plaintiff's Vague Testimony That He Neither Heard Nor Saw The Term "Tip Credit" At Friday's Is Insufficient To Create An Issue Of Fact**

Plaintiff's testimony that he "never heard the term 'tip credit'" and had never "seen [the term 'tip credit'] on any document" while working at Friday's does not save his claim.  (*See* Ex. 32, Calabrese Dep. 81:5-18 & 120:21-121:3.)  Plaintiff's own testimony refutes those vague assertions, particularly in that Plaintiff: (a) agreed that he had no reason to dispute his training records, which show he reviewed and acknowledged the tip credit notification form in October 2013 (and which includes the term "tip credit") (*id.* at 106:14-107:5 & 107:15-19); and (b) admitted that he signed a tip credit notification form on January 21, 2015 (which also includes the term "tip credit") (*id.* at 127:2-8 & Ex. 18, Plaintiff's Signed New Hampshire Notice; *see*

16

*also id.* at 129:7-23 (admitting that the words "tip credit" are included in the tip credit notification form he signed on January 21, 2015)).

Plaintiff's protestations to the contrary – that he never saw the term "tip credit" or heard it – are insufficient to rebut Friday's concrete evidence. *See Schaefer v. Walker Bros. Enters, Inc.*, No. 10-CV-6366, 2014 WL 7375565, at *5 (N.D. Ill. Dec. 17, 2014) (finding that where "[t]he undisputed facts and evidence show that Defendants adequately informed their servers, including Lead Plaintiff, of the tip credit provisions[,] Lead Plaintiff's mere assertion to the contrary does not create a genuine issue of fact") (citation omitted), *aff'd* 829 F.3d 551 (7th Cir. 2016); *Giuffre v. Marys Lake Lodge, LLC*, No. 11-CV-28, 2012 WL 4478806, at *5 (D. Colo. Sept. 28, 2012) (granting summary judgment to employer on FLSA tip credit notification claim because plaintiff failed to dispute that legally sufficient poster was displayed in restaurant in which he worked); *see also Turner v. McCarthy*, No. 15-CV-829, 2016 WL 7744450, at *4 (W.D. Pa. Dec. 27, 2016) (finding that plaintiff's "vague, post-hoc recollections" of defendant's actions could not create a genuine dispute in the face of defendant's records and affidavit to the contrary); *Collins v. Sload*, No. 99-CV-829, 2006 WL 319290, at *5 (M.D. Pa. Feb. 10, 2006) (summary judgment granted to defendant where plaintiff's claim was based on defendant humiliating him, but plaintiff could only testify that he "believe[d]" such conduct occurred but was "not totally sure").

In short, Plaintiff cannot dispute that he received proper notice of the tip credit and, therefore, the Court should grant summary judgment to Friday's on Plaintiff's tip credit claims under the FLSA, the PMWA, and the NHMWL.

17

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S TIP CREDIT NOTIFICATION CLAIMS IN PART

### A.   Plaintiff's NHMWL Tip Credit Notice Claim Should Be Dismissed Because The NHMWL Does Not Require Tip Credit Notice

The NHMWL does not require an employer to provide notice of the tip credit.  Indeed, the statute does not mention notification of the tip credit in any way.  *See* N.H. Rev. Stat. § 279.  Further, no judicial decision imposes such a requirement under the NHMWL or any other New Hampshire law.  Accordingly, the Court should grant judgment as to Plaintiff's tip credit notification claim under the NHMWL.

In a footnote in Plaintiff's motion for class certification, Plaintiff asserts that "because New Hampshire requires employees to be paid at least the federal minimum wage, it can be said that New Hampshire has incorporated the federal tip credit notification provisions into its law." (ECF No. 39-1 at 6 n.4 (citing *Chen v. C & R Rock Inc.*, No. 14-CV-114, 2016 U.S. Dist. LEXIS 36951, at *9 (D.N.H. Mar. 22, 2016).)  Plaintiff bases this assertion exclusively on a statement in *Chen* that "New Hampshire law mirrors the federal wage . . . requirements."  *See id.* (citing *Chen*, 2016 U.S. Dist. LEXIS 36951, at *9 (in turn, citing N.H. Rev. Stat. § 279:21)).  However, that statement from *Chen* has nothing to do with tip credit notice requirements; the tip credit was not even at issue in *Chen*.  Instead, that statement refers to the fact that the NHMWL provides for a minimum hourly wage of $7.25 per hour and time-and-a-half overtime pay, just as the FLSA does.  *See* N.H. Rev. Stat. §§ 279:21 & 279:21-VIII (requiring that no company "employ any employee at any hourly rate lower than that set forth in the federal minimum wage law, as amended" and that employees "be paid at the rate of time and one-half for all time worked in excess of 40 hours in any one week").  Accordingly, *Chen* provides Plaintiff no support.

Because the NHMWL does not require notification of the tip credit, the Court should grant summary judgment to Friday's on Plaintiff's tip credit notification claim under the NHMWL (Count III).  *See Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 253 (3d Cir. 2010) (explaining "the well-established principle that where two competing yet sensible interpretations of state law exist, we should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of [the state whose law is at issue] decides differently") (internal quotations & citations omitted); *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent.").

### B.    The Court Should Grant Summary Judgment On Plaintiff's Tip Credit Notice Claims From January 21, 2015 Forward

Plaintiff admits that he signed Friday's 2015 tip credit notification form on January 21, 2015.  (Ex. 32, Calabrese Dep. 127:2-8 & Ex. 18, Plaintiff's Signed New Hampshire Notice.) Plaintiff concedes that such form provided him sufficient notice as a matter of law.  (ECF No. 39-1 at 4, 8.)  At minimum, therefore, Plaintiff's claims are barred from January 21, 2015, forward, and alternatively, the Court should grant partial summary judgment in favor of Friday's on Plaintiff's tip credit notification claims from that date forward.

## III.   THE COURT ALSO SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFF'S INVOLUNTARY TIP SHARE CLAIM

The Court also should grant summary judgment for Friday's on Plaintiff's involuntary tip share claim under the NHMWL (Count III) because the undisputed facts show that Friday's did not mandate or coerce Plaintiff to share tips in New Hampshire.

To maintain a claim for violation of New Hampshire law, Plaintiff must establish that Friday's mandated or coerced him to share his tips.  In particular, New Hampshire law provides: "Tips are wages and shall be the property of the employee receiving the tip and shall be retained

by the employee, unless the employee *voluntarily and without coercion* from his or her employer agrees to participate in a tip pooling or tip sharing arrangement." N.H. Rev. Stat. § 279:26-b (emphasis added). New Hampshire law defines "coercion" as "the threat of or a direct action which results in an adverse effect on an employee's economic or employment status." N.H. Rev. Stat. § 279:1-XV.

The undisputed facts show that Plaintiff voluntarily tipped-out bartenders without Friday's involvement. Specifically, Plaintiff admits that there was no designated tip share in Concord. (Ex. 32 Calabrese Dep. 214:4-10.) Plaintiff also admits that Concord managers did not require him to share his tips. (*Id.* at 86:18-87:7 & 292:7-16.) Further, Plaintiff concedes that *he* decided whether and how much to tip-out bartenders. (*Id.* at 86:23-87:7, 88:17-23 & 198:10-199:1.) He made that decision based on the number of drinks he "rang in on that evening" with a bartender. (*Id.* at 198:19-199:1.) Indeed, Plaintiff concedes that, on some occasions, he did not tip-out bartenders at all, specifically when he did not ring any drinks with a bartender. (*Id.* at 199:23-200:4, 278:1-4 & 285:5-21.) In that vein, Plaintiff admits that bartenders understood the possibility of not being tipped-out because they knew "that *tipping out wasn't mandatory.*" (*Id.* at 202:22-203:4 (emphasis added); *see also id.* at 292:15-16 ("Q. Was [tipping-out] required by management? A. No.").) Finally, Plaintiff admits that he received no punishment or adverse employment consequences when he decided not to tip-out bartenders. (*Id.* at 278:1-279:1.) The only consequence Plaintiff could identify was that "[t]he bartenders were a little upset." (*Id.* at 278:8-20.)

Plaintiff's manager Lascelle confirms that she "personally told all tipped employees at the Concord restaurant that they were not required to share their tips with anyone . . . [and] that they were entitled to keep all tips they received." (Ex. 12, Lascelle Decl. ¶ 15.) Further,

20

Lascelle explained to employees "during orientation . . . that New Hampshire did not allow mandated tip pools . . . [and] whether they chose to share tips was completely up to them." (*Id.* ¶ 10.)

   The sole testimony Plaintiff has mustered in support of his claim is that his managers "strongly encouraged that servers gave the bartenders some money at the end of each shift." (*Id.* at 85:11-86:4.)  However, Plaintiff cannot recall what in particular any such manager said to "strongly encourage" him to tip-out.  (*Id.* at 86:1-17 & 87:14-19.)  As such, Plaintiff cannot survive summary judgment.  *See, e.g.*, *Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue.") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Even if Plaintiff could provide support for his bare assertion that Friday's strongly encouraged him to share tips, strong encouragement is not tantamount to coercion.  *Compare Thornton v. Crazy Horse, Inc.*, No. 06-CV-251, 2012 WL 2175753, at *4 (D. Alaska June 14, 2012) (finding after bench trial that the fact that management and co-workers "expected and strongly encouraged" tip sharing did not establish that the employer "mandated" tip sharing) *with Ichiban Japanese Steakhouse, Inc. v. Rocheleau*, 167 N.H. 138, 140-41 (2014) (upholding New Hampshire DOL finding that employer's tip pooling program was not voluntary where evidence showed prospective employee had to agree to participate in the tip pool or he would not be hired) and *Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1357-58 (M.D. Fla. Feb. 18, 2016) (finding genuine dispute as to whether tip pool was mandatory where, unlike here, "each named Plaintiff testified that he believed contributions to the pool were mandatory" in tandem with evidence that managers "expressly told" plaintiffs that the tip pool was mandatory and managers changed employees' tip pool

allocations if they failed to allocate enough).  Therefore, Plaintiff's involuntary tip share claim fails as a matter of law.

Any reliance by Plaintiff upon the language in Friday's Voluntary Tip Pool Form (TGIF 003025) or tip credit notification forms (Wells Decl. Ex. P (TGIF 002805) & Ex. 18, Plaintiff's Signed New Hampshire Notice) cannot save his claim.  Plaintiff's admission that there was, in fact, no designated tip-out at the Concord restaurant defeats any claim that the Voluntary Tip Pool Form or tip credit notification forms created one.  (Ex. 32, Calabrese Dep. 214:4-10.) Moreover, neither form provided to Plaintiff required a mandatory tip pool because both forms allow for a "required" tip-out of 0%.  Specifically, the tip credit notification forms state, respectively, that the "required tip-pool contribution or percentage is _____ %" (Wells Decl. Ex. P (TGIF 002805)), and that the "required tip-out contribution or percentage for servers and bartenders is *up to* 3% of net sales" (Ex. 18, Plaintiff's Signed New Hampshire Notice (emphasis added)).  Plaintiff admits that such forms allow for 0% tip-out.  (Ex. 32, Calabrese Dep. 290:22-291:10.)

In short, the undisputed facts show that Plaintiff voluntarily, without coercion, and without consequence decided whether to share his tips with Concord bartenders on a nightly basis.  As such, the Court should grant summary judgment in favor of Friday's on Plaintiff's involuntary tip share claim under the NHMWL (Count III).

## CONCLUSION

For the reasons set forth above, Friday's respectfully requests that the Court grant summary judgment to Friday's on Plaintiff's Counts I, II and III.  In the alternative, Friday's respectfully requests that the Court grant partial summary judgment to Friday's on Plaintiff's NHMWL tip credit notification claim in Count III and/or grant summary judgment with respect to all tip credit notification claims from January 21, 2015, forward.

DATED:  April 28, 2017                    Respectfully submitted,

                                          SEYFARTH SHAW LLP

Gerald L. Maatman, Jr.*                   By:___/s/ Gerald L. Maatman, Jr._____
*gmaatman@seyfarth.com*                            Gerald L. Maatman, Jr.
Jennifer A. Riley* IL No. 6272366
*jriley@seyfarth.com*
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Phone: 312-460-5000
Fax:    312-460-7000

Gina Merrill*
*gmerrill@seyfarth.com*
Jacob Oslick (Pa. Attorney No. 311028)
*joslick@seyfarth.com*
SEYFARTH SHAW LLP
620 Eighth Avenue, 33rd Floor
New York, NY 10018
Phone: 212-218-5500
Fax:    212-218-5526

*Attorneys for Defendants*

*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 28, 2017, he served a copy of the

foregoing DEFENDANT TGI FRIDAY'S MEMORANDUM IN SUPPORT OF ITS MOTION

FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS on all counsel of record via the

Court's ECF filing system.

/s/ Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.