```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ADAM CALABRESE, Individually and   :
on behalf of all others            :
similarly situated                 :
                                   :
         Plaintiff,                :    CIVIL ACTION
                                   :
    vs.                            :
                                   :    NO. 16-CV-0868
TGI FRIDAY'S INC., et al.,         :
                                   :
         Defendants                :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                                          **November 2, 2017**

This putative collective/class action has been brought before the Court on Motion of the Defendants for entry of summary judgment in their favor on all of Plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §333.102, *et. seq.*, and the New Hampshire Minimum Wage Law, N.H. Rev. Stat. §279:1, *et. seq.*  For the reasons which follow, the motion shall be granted.

## Factual Background

In September 2013, Plaintiff Adam Calabrese was hired for a server position at the TGI Friday's restaurant in Concord, New Hampshire, a position in which he remained through April 2014, when he began working at the TGI Friday's in Montgomeryville, Pennsylvania.  Plaintiff worked as a server at the

Montgomeryville Friday's through September 2014. In October 2014, Mr. Calabrese resumed working at the Friday's in Concord, New Hampshire where he remained until February, 2015. (Pl's Compl., ¶ 19). In both of the TGI Friday's restaurants in which Plaintiff worked, he was paid on an hourly basis, with Friday's paying him a cash wage of $2.83 per hour in Pennsylvania and $3.26 hourly in New Hampshire plus tips. (Pl's Compl., ¶s 38, 39, 43). In the event that Plaintiff did not earn enough in tips to bring his hourly wage up to the minimum wage, Friday's was to make up the difference. Plaintiff avers that he typically worked some 30 hours per week at both the Concord, NH and Montgomeryville, PA locations, usually in 5 shifts lasting approximately 6 hours and beginning around 4 p.m. and ending at 10 p.m. (Pl's Compl., ¶s 41-42).

Although Friday's took a "tip credit" in paying Plaintiff his compensation which amounted to $3.99 in New Hampshire and $4.42 in Pennsylvania, Plaintiff contends that it failed to inform him of its intention to take that credit and the amount it intended to claim as a credit in violation of U.S. Department of Labor regulations and relevant provisions of the FLSA and Pennsylvania and New Hampshire state law. (Pl's Compl., ¶s 50-51, 54-55, 57). In addition, Plaintiff alleges that Friday's violated the New Hampshire Minimum Wage Law insofar as it mandated that he participate in a tip pooling/tip sharing

arrangement while he was working at the Concord location.  (Pl's Compl., ¶s 59-61).

In the motion which is now before us, Defendant TGI Friday's submits that because the evidence in this matter demonstrates that it did in fact provide Plaintiff with proper notice of the tip credit provisions of the FLSA and the applicable states' law, and that, contrary to Plaintiff's claims, it did *not* require him to share his tips with other employees in New Hampshire, it is entitled to the entry of judgment in its favor as a matter of law on all of the claims against it.

## Summary Judgment Standards

In ruling upon a motion for summary judgment, the courts are generally guided by the language contained in Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

In reading this rule, it is clear that summary judgment is appropriately entered only when the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Willis v. UPMC Children's Hospital of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015).  An issue of fact is material and genuine if it "affects

the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party." Parkell v. Danberg, 833 F.3d 313, 323 (3d Cir. 2016)(quoting Willis, supra. and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In considering a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013). "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(quoting Wetzel v. Tucker, 139 F.3d 380, 383, n.2 (3d Cir. 1998)).  In response, and "to prevail on a motion for summary judgment, 'the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant.'" Burton, supra,(quoting Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)).  Thus, "[t]he moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Moody v. Atlantic City Board of Education, 870 F.3d 206,

213 (3d Cir. 2017)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)).[1]

### Discussion

As noted, this case essentially presents two claims - (1) that Defendant violated federal and applicable state labor and wage laws by failing to inform him that it would be taking a "tip credit" in paying him his wages; and (2) that it violated New Hampshire law by requiring him to participate in a tip pool. In pressing these claims, Plaintiff is first and foremost invoking the federal Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.*, which was enacted by Congress in 1938 with the goal of "protecting all covered workers from substandard wages and oppressive working hours." Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 147, 132 S. Ct. 2156, 2162, 183 L. Ed.2d 153 (2012)(quoting Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed.2d 641 (1981)).

---

[1] Rule 56(c), discussing summary judgment procedures, is in accord and states as follows in pertinent part:

> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ...

Under Section 6 of the FLSA 29 U.S.C. §206,

> (a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
>
> > (1) except as otherwise provided in this section, not less than -
> >
> > ...
> >
> > $7.25 an hour ...

29 U.S.C. §206(a)(1). This rate is the same under both Pennsylvania and New Hampshire state law. See, 43 P.S. §333.104(8)(a.1); N.H. Rev.Stat. 279:21.

However, "Congress carved out an exception to the minimum wage for certain occupations in which tips can reliably be expected to supplement wages." Perez v. Lorraine Enterprises, Inc., 769 F.3d 23, 25 (1st. Cir. 2014). This so-called "tip credit" is described in 29 U.S.C. §203(m):

> ... In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to -
>
> > (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on the date of the enactment of this paragraph [enacted August 20, 1996]; and
> >
> > (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 6(a)(1) [29 U.S.C. §206(a)(1)].

The additional amount on account of tips may not exceed the

value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

The Code of Federal Regulations, 29 C.F.R. §531.59, similarly addresses the tip credit issue.[2]  It states:

**(a)** In determining compliance with the wage payment requirements of the Act, under the provisions of section 3(m) the amount paid to a tipped employee by an employer is increased on account of tips by an amount equal to the formula set forth in the statute (minimum wage required by section 6(a)(1) of the Act minus $2.13), provided that the employer satisfies all the requirements of section 3(m). This tip credit is in addition to any credit for board, lodging, or other facilities which may be allowable under section 3(m).

**(b)** As indicated in §531.51, the tip credit may be taken only for hours worked by the employee in an occupation in which the employee qualifies as a "tipped employee." Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section. The credit allowed on account

---

[2] See Also, 29 C.F.R. §§ 531.51, 531.52, 531.54 and 531.56 which also discuss the conditions for taking tip credits in making wage payments, the general characteristics of "tips," tip pooling and the meaning of "more than $30 a month in tips."

7

> of tips may be less than that permitted by statute (minimum wage required by section 6(a)(1) minus $2.13); it cannot be more. In order for the employer to claim the maximum tip credit, the employer must demonstrate that the employee received at least that amount in actual tips. If the employee received less than the maximum tip credit amount in tips, the employer is required to pay the balance so that the employee receives at least the minimum wage with the defined combination of wages and tips. With the exception of tips contributed to a valid tip pool as described in §531.54, the tip credit provisions of section 3(m) also require employers to permit employees to retain all tips received by the employee.

Again, the laws of Pennsylvania and New Hampshire are in accord. 43 P.S. §103(d) provides in relevant part:

> ... In determining the hourly wage an employer is required to pay a tipped employe, the amount paid such employe by his or her employer shall be an amount equal to: (i) the cash wage paid the employe which for the purposes of the determination shall be not less than the cash wage required to be paid the employe on the date immediately prior to the effective date of this subparagraph; and (ii) an additional amount on account of the tips received by the employe which is equal to the difference between the wage specified in subparagraph (i) and the wage in effect under section 4 of this act. The additional amount on account of tips may not exceed the value of tips actually received by the employe. The previous sentence shall not apply with respect to any tipped employe unless:
>
>> (1) Such employe has been informed by the employer of the provisions of this subsection;
>>
>> (2) All tips received by such employe have been retained by the employe and shall not be surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect; where the gratuity is added to the charge made by the establishment, either by the management, or by the customer, the gratuity shall become the property of the employe; except that this subsection shall not be construed to prohibit the pooling of tips among employes who customarily and regularly receive tips.

Under 34 Pa. Code §231.101:

> ...
>
> **(b)** The minimum wage credit for tipped employees is $2.83 per hour under section 3(d) of the act (43 P.S. §333.103(d)) with all of the following conditions:
>
>> **(1)** An employer shall pay the difference when the employee's tips plus the credit for tipped employees does not meet the Pennsylvania minimum wage contained in subsection (a).
>>
>> **(2)** The tip credit applies only if an employee received over $30 in tips for a month.

And N.H. Rev.Stat. §279.21 states the following in pertinent part:

> ... Tipped employees of a restaurant, hotel, motel, inn or cabin, or ballroom who customarily and regularly receive more than $30 a month in tips directly from the customers will receive a base rate from the employer of not less than 45 percent of the applicable minimum wage. If an employee shows to the satisfaction of the commissioner that the actual amount of wages received at the end of each pay period did not equal the minimum wage for all hours worked, the employer shall pay the employee the difference to guarantee the applicable minimum wage.

The Supreme Court "has stated that 'exemptions' in the Fair Labor Standards Act are to be narrowly construed against the employers seeking to assert them." Sandifer v. U.S. Steel Corp., 134 S. Ct. 870, 879, n.7, 187 L. Ed.2d 729, 741, n.7 (2014)(quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed.2d 393 (1960)). Thus, "an employer can utilize the tip credit only when: 1) an employer informs the employee that a tip credit is being utilized and the amount of such a credit; 2) the employee makes tips equaling the tip credit

amount and 3) the employee retains all tips collected." Mackereth v. Kooma, Inc., Civ. A. No. 14-4824, 2015 U.S. Dist. LEXIS 63143, at *22, 2015 WL 2337273 (E.D. Pa. May 14, 2015)(quoting Ford v. Lehigh Valley Rest. Group, Inc., No. 14-cv-227, 2014 UWL 3385128 at *2 (M.D. Pa. July 9, 2014)). It is the employer's burden to show that it has satisfied all the requirements for tip credit eligibility and if the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage. Perez v. Lorraine, 769 F.3d at 27; Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1994); Chen v. Century Buffet & Restaurant, Civ. A. No. 09-1687, 2012 U.S. Dist. LEXIS 4214 at *15, 2012 WL 4214 (D. N.J. Jan. 12, 2012).

In this case, we find that Defendant has met its burden of showing that it fulfilled its notice obligations with respect to the tip credit at both the New Hampshire and Pennsylvania restaurants where Plaintiff worked. Indeed, the record here reflects first, that it was Defendant's prescribed policy and procedure to inform all newly-hired tipped employees, including servers, both verbally and in writing that they would be paid an hourly rate which was less than the mandated minimum wage because they received tips (provided that they received tips in a sufficient amount to cover the tip credit), what the amount of

their cash wages would be and the amount of the tip credit. This information was conveyed orally by the new hire's training manager, as they reviewed all of the new hire documents with the new employee at the time of their orientation, and in tip credit notification forms which all new employees were required to acknowledge by signing. (Plaintiff's Exhibits in Support of Motion to Conditionally Certify Collective Action, Exhibit C, pp. 96-100; Defendant's Exhibits in Opposition to Plaintiff's Motion to Conditionally Certify Collective Action, Ex. Nos. 1, 2, 8, 12-14, 16-17). In addition, this information is also disseminated to Friday's tipped employees through the copy of the employee handbook which each of them receives at the time of hire, which is verbally explained to them by their manager, and which each employee is required to review and on which they are tested. (Exhibit C to Plaintiff's Motion for Collective Action Certification, pp. 116-119, 121-131; Pl's Motion for Collective Action Certification, Exhibit H). Specifically, the handbook includes provisions which explain the tip credit and explain that if a tipped employee's compensation falls below minimum wage or they failed to make the requisite minimum amount in tips, Friday's would pay them the difference between the cash wage and minimum wage. Each employee is required to either electronically or on paper sign an acknowledgment and receipt verifying that they read and understood the handbook. (Pl's Exhibit C, pp. 121-

131; Pl's Exhibits I, L, M N, T, U, V; Def.'s Exhibits, Nos. 2, 4, 8, 10-12, 28-31).

Furthermore, each of the Friday's locations at which Plaintiff worked had current labor law posters that explained the relevant state and federal laws relating to the payment of minimum wages and the tip credits posted in areas frequented by employees, such as by the employee break rooms, restrooms or soft drink stations. (Def.'s Exhibit Nos. 10-12, 20-24, 28-31). And, the record further evinces that Plaintiff was in fact notified at the time of his orientation and training as a new employee in October 2013 by his manager as there is at least one copy of his signed Tip Credit Notification form and copies of his training records and tests among Defendant's Exhibits in Opposition. (Def's Exhibit Nos. 18, 26).

In response to the Motion for Summary Judgment, Plaintiff essentially relies solely upon his own deposition testimony that he does not recall ever hearing the term "tip credit" and he has no recollection of ever being told that Defendant would be taking a tip credit when he started working at the Concord, New Hampshire location. (Pl's Deposition, excerpted copies of which are attached as Exhibit 2A to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment; Exhibits 5 and 32 to Defendant's Response in Opposition to Plaintiff's Motion to Conditionally Certify Collective Action, pp. 81, 174-175).

Although Plaintiff acknowledged that he understood he would be paid a wage plus tips and that this understanding was based upon something that he was told by his managers during the interview process, he does not remember being told by Friday's how he would be paid, what his anticipated job duties would be or the work he would be expected to perform as a server, being told anything about his work hours or the shifts he might be working, or how much he might expect to receive in tips.  (Pl's Dep., pp. 47, 49-51, 55-56, 58).  Plaintiff did remember taking computerized training using a program called "Stripes U," beginning on the first day of his orientation at Friday's in New Hampshire and that this training took several hours.  (Pl's Dep., pp. 71-72).  All-in-all, Plaintiff's training took about one week and consisted of additional computerized courses and training on Stripes U, shadowing other employees, instruction and walk-arounds by managers.  (Pl's Dep., pp. 73, 75).  Plaintiff admitted that he could have been told about the wage component of his pay before he began serving customers at Friday's but he just doesn't remember, although he does recall being told that there would be an hourly rate which would be less than the minimum wage, that the figure $3.27 per hour sounds familiar, and that he clearly understood that he would receive wages plus tips.  (Pl's Dep. p. 78-83).  Furthermore, when questioned about whether certain questions from the Employee Handbook concerning, *inter*

*alia*, the payment of wages and tips were covered during his training[3], Plaintiff stated that "[a]ll of these were covered,

---

[3] These questions can be found toward the end of the Team Member Handbook at p. 17 entitled "Grab A Pen" and which reads as follows:

> We figure your head is probably spinning with all the new info you've been given, so here are some starter questions for you to go over with your supervisor.
>
> **Ask the Question:**
>
> 1. When do I get paid?
>
> 2. Am I in a tip credit state? How much will I be paid by Friday's per hour?
>
> 3. How do I clock in my hours?
>
> 4. Restaurant Team Members: How does the tip out work here?
>
> 5. Based on my needs, what (if any) flexible scheduling is available to me?
>
> 6. When will I be eligible for medical and dental benefits?
>
> 7. What benefits am I eligible for now?
>
> 8. What should I wear to work?
>
> 9. Where should I park?
>
> 10. What doors should I enter/exit from?
>
> 11. Where can I put my purse/bag/cell phone?
>
> 12. Where can I eat and drink on duty? When off duty?
>
> 13. Do we have any safety procedures for walking to my car at night?
>
> 14. What are our specific late/attendance policies?
>
> 15. How long will my training be?
>
> 16. What will I be paid while training?
>
> 17. Can I smoke on Friday's property?
>
> 18. How should I notify you about upcoming vacations?
>
> **Supervisor's Name(s):**
>
> **Building Address:**
>
> **Phone Number:**

yes." (Pl's Dep., pp. 98, 104). Based upon all of this evidence, we conclude that contrary to the assertions contained in his complaint, Plaintiff was in fact notified by Friday's that both New Hampshire and Pennsylvania were tip credit states and the restaurants where he was employed would be taking a credit against the minimum wage and the amount of the credit which would be taken. We therefore find that judgment as a matter of law on this claim is properly entered in favor of TGI Friday's and against the Plaintiff in no amount.

Turning next to Plaintiff's second claim - that is, that TGI Friday's unlawfully compelled him to participate in a mandatory tip pool in New Hampshire, we likewise find that Defendant is entitled to summary judgment on this claim as well.

In advancing this claim, Plaintiff relies upon the provisions of N.H. Rev. Stat. §279:26-b, which read:

> **279:26-b.  Tip Pooling and Sharing**.
>
> **I.**  Tips are wages and shall be the property of the employee receiving the tip and shall be retained by the employee, unless the employee voluntarily and without coercion from his or her employer agrees to participate in a tip pooling or tip sharing arrangement.
>
> **II.**  No employer is precluded from administering a valid tip pooling or tip sharing arrangement at the request of the employee, including suggesting reasonable and customary practices, and mediating disputes between employees regarding a valid tip pooling or tip sharing arrangement.

---

Person to call if running late or not able to come in:

(Pl's Exhibit T, p. 17).

> **III.** Nothing shall preclude employee participants in a tip pool from agreeing, voluntarily and without coercion, to provide a portion of the common pool to other employees, regardless of job category, who participated in providing service to customers.

Under the definitions section of the statute, N.H. Rev. Stat. §279:1, "tip," "tip pooling," "tip sharing" and "coercion" are defined as follows:

> **XII.** "Tip" means money given to an employee by a customer, in cash or its equivalent, or transferred to the employee by the employer pursuant to directions from a credit card customer who designates a sum to be added to the bill as a tip, or added as a gratuity or service charge to a customer's bill, in recognition of service performed.
>
> **XIII.** "Tip pooling" means the voluntary practice by which the tip earnings of directly tipped employees within the same job category are intermingled in a common pool and then redistributed among participating employees.
>
> **XIV.** "Tip sharing" means the practice by which a directly tipped employee gives a portion of his or her tips to another worker who participated in providing service to customers.
>
> **XV.** "Coercion" means the threat of or a direct action which results in an adverse effect on an employee's economic or employment status.

Contained in the record in this matter is a signed declaration from Heather Lascelle, who has been employed as the General Manager at the Concord, NH Friday's since 2011 and during the periods that Plaintiff was employed there as a server. According to Ms. Lascelle's declaration, during orientation she personally informed all tipped employees that they were not required to share their tips with anyone and that they were entitled to keep all of the tips which they received.

16

(Defendant's Exhibit No. 12, p.4). It was her understanding that some servers chose to tip out the bartenders from time to time, at their discretion, and that the bartenders sometimes split tips among one another. The restaurant did not keep records as to which employees did or did not participate in any voluntary tip share and she never received any complaints or had any reports of complaints from any employee about a tip pool. Id.

Plaintiff himself testified that Ms. Lascelle told him that he was to keep any tips that he received at the Concord location. (Pl's Dep., p. 85). According to Plaintiff, however, it was "strongly encouraged that servers give the bartenders some money at the end of each shift," and that this encouragement came from his training by other servers and managers. (Pl's Dep., pp. 85-86). Plaintiff further testified that notwithstanding this encouragement, it was entirely his decision whether to tip out bartenders, that he himself chose how much to give them and that he usually made that determination based upon how many bar drinks he rang in on that evening. (Pl's Dep., pp. 86-89, 198-199). In fact, Plaintiff said that there were shifts on which he chose not to tip out the bar at all while he was working in New Hampshire, and that the bartenders themselves knew that tipping out wasn't mandatory. (Pl's Dep., 199-200, 202-203, 278). On those occasions when Plaintiff elected to not share his tips with the bartenders or anyone else, he did not receive any punishment or

suffer any adverse consequences aside from having to contend with bartenders who were upset with his decision.  (Pl's Dep., 276-279, 291-292).

From this, we find that while there may indeed have been peer pressure exerted on Plaintiff to participate in a tip pool, it did not rise to the level of coercion contemplated by the New Hampshire wage law.  Indeed, there is no evidence whatsoever that tip pool participation was ever required by Friday's management or that Plaintiff ever suffered any adverse or negative consequences from Friday's on those instances when he chose to not share his tips.  Although the bartenders with whom he worked may have been unhappy with Plaintiff's decision on those occasions, there is no evidence on this record that the bartenders were in any position to cause a change in Plaintiff's employment conditions nor is there any evidence that even if they were, that any such acts of retaliation ever occurred.  Consequently, we find that judgment as a matter of law is also appropriately entered in Defendant's favor on Plaintiff's claim that he was unlawfully compelled to participate in a tip pool in violation of New Hampshire law.

An order follows.